JS-6



**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RAFAEL GARCIA, et al., | Case No. CV 13-9325 FMO (SHx) |
| Plaintiffs, | |
| v. | **ORDER REMANDING ACTION** |
| WELLS FARGO BANK, NA, et al., | |
| Defendants. | |

## INTRODUCTION

On November 22, 2013, plaintiffs Rafael Garcia and Martha C. Garcia ("plaintiffs"), filed a complaint in Los Angeles Superior Court, Case No. BC528456, against defendants Wells Fargo Bank, N.A. ("WFB" or "defendant"), NDex West, L.L.C., and Does 1 through 10, inclusive (collectively, "defendants"). Plaintiffs seek damages and injunctive relief against defendants under the California Homeowner Bill of Rights due to alleged "dual tracking" of their mortgage by WFB. See Cal. Civ. Code § 2924.12; (Notice of Removal ("NR"), Exhibit ("Exh.") A ("Complaint")) at ¶¶ 1 & 8). On December 19, 2013, WFB removed the action to this court on the basis of diversity jurisdiction, under 28 U.S.C. § 1332. (See NR at 2). In its NR, WFB notes that: (1) plaintiffs are California citizens, (see id. at 2-3; see also Complaint at ¶ 2); (2) WFB is a citizen of South Dakota, (see NR at 2 & 5); and (3) NDex West, L.L.C. is a citizen of Delaware, Texas, Michigan, and Minnesota. (See NR at 2-3).

**STATEMENT OF FACTS**

Plaintiffs allege that they were engaged in good-faith negotiations with WFB to obtain a modification of the home loan on their property, which is located at 17129 Leal Ave., Cerritos, CA. (See Complaint at ¶ 2). However, WFB engaged in what is known as "dual tracking," meaning that while the loan modification negotiations were taking place, WFB took steps to initiate foreclosure proceedings against plaintiffs' property. (See id. at ¶¶ 1 & 3). WFB promised a modification once certain documents were provided, but those same documents had already been requested and provided on many occasions. (See id. at ¶¶ 4 & 11). Additionally, rather than establishing a single point of contact as required by Cal. Civ. Code § 2923.7, plaintiffs were "shuttled from representative to representative" by WFB. (See id. at ¶¶ 6 & 12-13). On or about November 5, 2013, WFB recorded and served a notice of trustee's sale scheduled for December 2, 2013. (See id. at ¶ 11).

**DISCUSSION**

"Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). "The district courts . . . have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000" and where the action is between "citizens of different States." 28 U.S.C. § 1332(a). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). The Ninth Circuit "strictly construe[s] the removal statute against removal jurisdiction." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir.1992). Thus, "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." Id. "The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." Id.

Plaintiffs are residents of California. (See NR at 2-3; see also Complaint at ¶ 2). WFB claims it is a citizen of South Dakota because its main office is located in Sioux Falls, South

Dakota.  (See NR at 5-6; see also id., Exh. H ("Articles of Association") at 66 ("The main office of this Association shall be in the City of Sioux Falls, County of Minnehaha, State of South Dakota.")).  The question currently before the court is whether, for the purposes of determining diversity jurisdiction, WFB is also located in, and thereby a citizen of, the state of its principal place of business.[1]

"[C]orporate citizenship is governed by 28 U.S.C. § 1332(c)(1), which provides that a corporation is a citizen of both its state of incorporation and, since 1958, the state in which its principal places of business is located."  Martinez v. Wells Fargo Bank, 2013 WL 2237879, * 2 (N.D. Cal. 2013).  In addition, national banks are subject to a separate jurisdiction provision, 28 U.S.C. § 1348, which provides, in relevant part, that:

> The district courts shall have original jurisdiction of any civil action commenced by the United States, or by direction of any officer thereof, against any national banking association, any civil action to wind up the affairs of any such association, and any action by a banking association established in the district for which the court is held, under chapter 2 of Title 12, to enjoin the Comptroller of the Currency, or any receiver acting under his direction, as provided by such chapter.

> All national banking associations shall, for the purposes of all other actions by or against them, be deemed citizens of the States in which they are respectively located.

28 U.S.C. § 1348 (emphasis added).  WFB "is a 'national banking association' otherwise known as a 'national bank.'"  Taheny v. Wells Fargo Bank, N.A., 878 F.Supp.2d 1093, 1097 (E.D. Cal. 2012).

Section 1348 does not define the term "located" for purposes of establishing jurisdiction.  See, generally, 28 U.S.C. § 1348.  "Over the years, the courts have struggled over what 'located' means in this context."  Taheny, 878 F.Supp.2d at 1098.  Courts have generally settled upon one

---

[1]      WFB does not assert that its principal place of business is in California, however, its NR is predicated on that very fact.  (See NR at 8).

1    of the following definitions:  "(1) where the bank has its 'main office;' (2) where the bank has

2    branches; (3) where the bank's 'principal place of business' is; and (4) some combination of the

3    prior three."  Id.  The Ninth Circuit, in American Surety Co. v. Bank of Cal., 133 F.2d 160 (9th Cir.

4    1943), noted the lack of consensus regarding the term's definition and instead focused on the

5    "close analogy between [a national banking association] and a corporation national in scope . . .

6    [whose] citizenship . . . is fixed by its principal place of business[.]"  Id. at 162.  Ultimately, the

7    American Surety court saw no error in the trial court's holding that diversity of citizenship was

8    established where the defendant, Bank of California, was a citizen "only of the state in which its

9    principal place of business [wa]s located, the State of California."[2]  Id.

10         More than 50 years after American Surety, the Supreme Court, in Wachovia Bank v.

11   Schmidt, 546 U.S. 303, 126 S.Ct. 941 (2006), considered the concept of citizenship of federally

12   chartered national banks.  See id. at 313, 126 S.Ct. at 948-49 ("[T]he term 'located,' as it appears

13   in the National Bank Act, has no fixed, plain meaning.").  The Schmidt Court noted that "[f]ederally

14   chartered national banks . . . are not incorporated by 'any State[ ]' [and] [f]or diversity jurisdiction

15   purposes, therefore, Congress has discretely provided that national banks 'shall . . . be deemed

16   citizens of the States in which they are respectively located.'"  Id. at 306, 126 S.Ct. at 945 (quoting

17   28 U.S.C. § 1348).  The Schmidt Court held that the term "located" "gain[ed] its precise meaning

18   from context" and, as such, for purposes of 28 U.S.C. § 1348, a national bank "is a citizen of the

19   State in which its main office, as set forth in its articles of association, is located."  Id. at 307, 126

20   S.Ct. at 945 (emphasis added).  Citing to Horton and Firstar, the Supreme Court stated that, "[t]o

21   achieve complete parity with state banks and other state-incorporated entities, a national banking

22   association would have to be deemed a citizen of both the State of its main office and the State

23

_____

24        [2]    Other circuits have also held that a national banking association is located in the state
     where it maintains its principal place of business.  See Firstar Bank, N.A. v. Faul, 253 F.3d 982,
25   994 (7th Cir. 2001) (holding that "a national bank is 'located' for purposes of 28 U.S.C. § 1348 in
     the state where the bank's principal place of business is found and the state listed on its
26   organization certificate."); Horton v. Bank One, N.A., 387 F.3d 426, 436 (5th Cir.), cert. denied,
     546 U.S. 1149 (2006) (holding that "the definition of 'located' is limited to the national bank's
27   principal place of business and the state listed in its organization certificate and its articles of
     association.").
28

of its principal place of business."[3]  Id. at 317 n. 9, 126 S.Ct. at 951 n. 9 (citing Horton, 387 F.3d at 431 and n. 26 and Firstar, 253 F.3d at 993-94).

The Schmidt Court expressly refrained from deciding whether a bank was located in both the state of its main office and of its principal place of business.  See Schmidt, 546 U.S. at 315 n. 8, 126 S.Ct. at 949-50 n. 8 ("Other readings mentioned in Court of Appeals opinions are the bank's principal place of business and the place listed in the bank's organization certificate.  Because this issue is not presented by the parties or necessary to today's decision, we express no opinion on it.") (internal citations omitted).  Indeed, "[n]either the Supreme Court nor the Ninth Circuit, nor any intervening Congressional enactment has ever held or instructed that a national bank is not located in the state of its principal place of business."  Taheny, 878 F.Supp.2d at 1099 (emphasis in original).  Thus, "Schmidt left open the door to either of two interpretations [of § 1348], that a national bank is a citizen of:  (1) only its state of association (the state in which its main office is listed in its articles of association) or (2) both its state of association and the state in which its principal place of business is located."  Martinez, 2013 WL 2237879, at * 3 (emphasis added).

WFB argues that post-Schmidt decisions "have held that § 1348 does not include the principal place of test, leaving national banks a citizen of only one state – that of its main office." (See NR at 6).  However, "[a]s the Supreme Court did not determine whether a national bank could also be a citizen where it has its principal place of business, the appellate and district courts have taken two different approaches on the issue."  Grace v. Wells Fargo Bank, N.A., 2013 WL 663169, *3 (S.D. Cal. 2013).  For example, as WFB notes, a divided Eighth Circuit panel, in Wells Fargo Bank, N.A. v. WMR e-PIN, LLC, 653 F.3d 702 (8th Cir. 2011), held that a bank's principal place of business was not relevant to citizenship.  See id. at 709 ("Had Congress wished to retain jurisdictional parity [when enacting the diversity jurisdiction statute governing corporate citizenship]

---

[3]  The Schmidt Court further stated that "[t]he counterpart provision [to 28 U.S.C. § 1332(c)(1)] for national banking associations, § 1348, however, does not refer to 'principal place of business'; it simply deems such associations 'citizens of the States in which they are respectively located.' The absence of a 'principal place of business' reference in § 1348 may be of scant practical significance for, in almost every case, as in this one, the location of a national bank's main office and of its principal place of business coincide."  546 U.S. at 317 n. 9, 126 S.Ct. at 951 n. 9.

1    it could have unequivocally done so.  It did not, and consequently the concept no longer applies.

2    We will not import a jurisdictional concept into § 1348 that was unknown at the time of its adoption.

3    Accordingly, we hold that, pursuant to § 1348, a national bank is a citizen only of the state in which

4    its  main  office  is  located.").    Alternatively,  a  number  of  courts,  consistent  with  the  Fifth  and

5    Seventh Circuits' decisions in <u>Horton</u> and <u>Firstar</u>, hold that national banks are located both in the

6    state  in  which  they  have  their  main  office,  as  well  as  in  the  state  of  their  principal  place  of

7    business.   See <u>Grace</u>, 2013 WL 663169, at *3; <u>Uriarte v. Wells Fargo Bank, N.A.</u>, 2011 WL

8    5295285,  *3  (S.D.  Cal.  2011)  ("[T]he  Court  believes  the  approach  advanced  by  the  Fifth  and

9    Seventh Circuits, as well as by Judge Murphy's dissent in <u>WMR</u>, is more consistent with § 1348's

10   legislative history and the Supreme Court's decision in [<u>Schmidt</u>]."); <u>Bickoff v. Wells Fargo Bank,</u>

11   <u>N.A.</u>, 2013 WL 100323, *5 (S.D. Cal. 2013) (finding that "a national banking association is a citizen

12   of both the state where it has its main office and the state of its principal place of business.").

13         "The rule from <u>American Surety</u> is clear:  'the "States in which they (national banking

14   associations) are respectively located" are those states in which their principal places of business

15   are maintained.'" <u>Rouse v. Wachovia Mortg., FSB</u>, 2012 WL 174206, *8 (C.D. Cal. 2012) (quoting

16   <u>American Surety</u>, 133 F.2d at 162).  "[B]ecause it is clear that <u>American Surety</u> focused on the

17   jurisdictional issue and made a deliberate decision to resolve it, the principal place of business test

18   is binding precedent for this Court [and] [t]he Court thus declines Wells Fargo's invitation to ignore

19   the Ninth Circuit's holding."  <u>Id.</u> at *11; <u>see also Firstar</u>, 253 F.3d at 989 ("To be sure, [<u>American</u>

20   <u>Surety</u> and other cases of that vintage] were not decided yesterday.  Nevertheless, <u>stare</u> <u>decisis</u>

21   counsels that we follow their reasoning unless [the defendant] can, in fact, demonstrate that

22   subsequent statutory changes or judicial decisions have rendered them infirm.").

23         To be sure, the Ninth Circuit, in <u>Lowdermilk v. United States Bank, N.A.</u>, 479 F.3d 994 (9th

24   Cir. 2007), cited <u>Schmidt</u> for the proposition that a national bank was a citizen of the state where

25   its main office was located.  See <u>id.</u> at 997.  Also, the Eastern District's decision in <u>California ex</u>

26   <u>rel Bates v. Mortg. Elec. Registration Sys., Inc.</u>, 2010 WL 2889061 (E.D. Cal. 2010) ("<u>Bates (I)</u>"),

27   cited <u>Schmidt</u> in its consideration of the plaintiff's motion to remand, noting that because Wells

28   Fargo's main office was in Sioux Falls, South Dakota, it was "a citizen of South Dakota, and . . .

6

not a citizen of California."  2010 WL 2889061, at *1 (internal quotation marks and citation omitted).  On appeal, the Ninth Circuit stated that the <u>Bates (I)</u> court "properly denied the motion to remand."  <u>Bates v. Morg. Elec. Registration Sys., Inc.</u>, 694 F.3d 1076, 1080 (9th Cir. 2012) ("<u>Bates (II)</u>").

The court, however, believes that reliance on these cases is improper.  To start, in <u>Lowdermilk</u>, "neither party challenged diversity [and], as jurisdiction was based on the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), only minimal diversity was required."  <u>Rouse</u>, 2012 WL 174206, at *10 (internal citation omitted).  Minimal diversity was never contested and 28 U.S.C. § 1348 "was not briefed or argued before [the] court."  <u>Tse v. Wells Fargo Bank, N.A.</u>, 2011 WL 175520, *2, n. 2 (N.D. Cal. 2011).  Further, although <u>Bates (II)</u> affirmed the district court's denial of plaintiff's motion to remand, it never explicitly overruled, challenged, or even discussed the holding of <u>American Surety</u>.  <u>See</u>, <u>generally</u>, <u>Bates (II)</u>.  To the extent that the <u>Bates (II)</u> decision affirmed a district court decision that relied on <u>Schmidt</u> without acknowledging <u>American Surety</u>, the court is not persuaded that it is appropriate to assume that the holding of <u>American Surety</u> is somehow irreconcilable with that of <u>Schmidt</u>.  <u>See</u> <u>Arizona Christian Sch. Tuition Org. v. Winn</u>, 131 S.Ct. 1436, 1448 (2011) ("When a potential jurisdictional defect is neither noted nor discussed in a federal decision, the decision does not stand for the proposition that no defect existed.  The Court would risk error if it relied on assumptions that have gone unstated and unexamined.") (internal citations omitted); <u>Hagans v. Lavine</u>, 415 U.S. 528, 533 n. 5, 94 S.Ct. 1372, 1377 n. 5 (1974) ("[W]hen questions of jurisdiction have been passed on in prior decisions sub silentio, this Court has never considered itself bound when a subsequent case finally brings the jurisdictional issue before us."); <u>United States v. L.A. Tucker Truck Lines, Inc.</u>, 344 U.S. 33, 38, 73 S.Ct. 67, 69 (1952) ("Even as to our own judicial power or jurisdiction, this Court has followed the lead of Chief Justice Marshall who held that this Court is not bound by a prior exercise of jurisdiction in a case where it was not questioned and it was passed sub silentio.").

The court finds Judge Karlton's reasoned analysis in <u>Taheny</u> persuasive with regard to the effect of <u>Lowdermilk</u> on diversity, especially as applied to <u>Bates (II)</u>.  In <u>Taheny</u>, Judge Karlton noted that he "would not lightly decline to follow the language of a Ninth Circuit decision . . .

7

1   [h]owever . . . : (I) in <u>Lowdermilk</u>, there <u>is</u> no Ninth Circuit language relating to the 'principal place

2   of business' issue, as that language exists only in an unpublished district court order, which was

3   not contested on appeal; and (ii) if the Ninth Circuit intended to give silent approval to the district

4   court's implicit rejection of the principal place of business test, it was both unnecessary to the

5   court's decision, and made in a casual manner not indicative of a binding ruling, especially one

6   that overrules the considered holding of a prior panel."  878 F.Supp.2d at 1105.  Similarly,

7   nowhere does the <u>Bates (II)</u> court discuss <u>American Surety</u> or the principal place of business test.

8   <u>See</u>, <u>generally</u>, <u>Bates (II)</u>.

9         Like <u>Taheny</u>, the court declines to read into <u>Bates (II)</u> an implicit approval of the <u>Schmidt</u>

10   test at the expense of the ruling set forth by the Ninth Circuit in <u>American Surety</u>.  <u>See</u> <u>Taheny</u>,

11   878 F.Supp.2d at 1105 ("Since the issue addressed in <u>American Surety</u> was not contested in the

12   <u>Lowdermilk</u> appeal, this court cannot attach significance to [the absence of any reference to

13   <u>American Surety</u>].").  "District courts are bound by prior Ninth Circuit precedent except where

14   'clearly irreconcilable' Supreme Court authority intervenes, in which case 'district courts should

15   consider themselves bound by the intervening higher authority and reject the prior opinion of [the

16   Ninth Circuit] as having been effectively overruled.'" <u>Rouse</u>, 2012 WL 174206, at *11 (quoting <u>Day</u>

17   <u>v. Apoliona</u>, 496 F.3d 1027, 1031 (9th Cir. 2007)).  Indeed, a number of district courts have held

18   that <u>Schmidt</u> and <u>American Surety</u> are reconcilable.  <u>See</u> <u>id.</u> at *12 ("To the extent the holding in

19   <u>Schmidt</u> differed from <u>American Surety</u> at all, it did so only insofar as it provided an <u>additional</u>

20   <u>basis for citizenship</u>.  By giving effect to both holdings, the Court interprets Ninth Circuit law on this

21   topic in accord with the majority view among the Circuits.") (emphasis added); <u>Taheny</u>, 878

22   F.Supp.2d at 1100 ("Wells Fargo's argument [that <u>American Surety</u> and <u>Schmidt</u> are irreconcilable]

23   is premised upon its assertion that <u>American Surety</u> and <u>Schmidt</u> both held for <u>single, but different,</u>

24   standards for citizenship."  "Instead, [these cases] each identify a different possibility for citizenship

25   - main office or principal place of business - without excluding the other possibility.") (internal

26   quotation marks omitted) (emphasis in original); <u>Ortiz v. Wells Fargo Bank, N.A.</u>, 2013 WL

27   1702790, *4 (S.D. Cal. 2013) ("Wells Fargo's contention that the Ninth Circuit decision in <u>American</u>

28   <u>Surety</u> is contrary to the Supreme Court decision in <u>Schmidt</u> was most recently addressed by

Judge Karlton [in Taheny].  As explained by Judge Karlton, American Surety identified a different possibility for citizenship, without excluding the other possibility as articulated by the Supreme Court in Schmidt, and both possibilities for citizenship are not in conflict.").  Further, "[i]t is true that American Surety stated:  'The trial court was right in holding that defendant is a citizen only of the state in which its principal place of business is located, the State of California.'  But that 'only' does not mean to the exclusion of the state where the bank has its main office – also California.  'Only' means to the exclusion of the other state proposed for citizenship in that case, namely Oregon, where the bank had its branch offices."  Taheny, 878 F.Supp.2d at 1100 (internal citation omitted) (emphasis in original).

Under the circumstances, the court agrees that American Surety "remains binding authority."  Ortiz, 2013 WL 1702790, at *4; see Martinez, 2013 WL 2237879, at *6 ("The Court likewise concludes American Surety remains binding precedent and joins the ranks of an increasing number of courts within the Ninth Circuit so holding.").  Both American Surety and Schmidt posed the same question: "is a national bank a citizen of every state where it maintains a branch office?"  Taheny, 878 F.Supp.2d at 1100.  Importantly, both cases responded to this query in the negative.  See Id.  The Schmidt court stated that national banks are citizens of the state where they maintained a main office, while the American Surety court determined that a national bank was a citizen of the state where it had its principal place of business, "without addressing whether it was also a citizen of the state where it had its 'main office'[.]"  Id. at 1100-01.  However, "there is no reason that 'located' cannot encompass 'principal place of business.'  The Supreme Court [in Schmidt] suggests as much when it ventures that the terms 'located' and 'established' are employed alternatively or synonymously and notes that 'established' might refer to a national bank's principal place of business."  Rouse, 2012 WL 174206, at *12.

WFB argues that the Ninth Circuit's reasoning in American Surety was flawed because it analogized banks to corporations for purposes of assessing jurisdiction during a time when there was no case law on national bank citizenship.[4]  (See NR at 14) ("American Surety's application

_____

[4]  The Supreme Court, in Hertz Corp. v. Friend, 559 U.S. 77, 130 S.Ct. 1181 (2010), noted that "[i]n 1928 this Court made clear that the 'state of incorporation' rule was virtually absolute"

1  of the principal place of business test in 1943 is <u>simply irreconcilable</u> with the Supreme Court's

2  analysis in [<u>Hertz Corp v. Friend</u>, 559 U.S. 77, 130 S.Ct. 1181 (2010)] (and <u>Schmidt</u>) and must .

3  . . be ignored on this point.").  However, as noted in <u>Martinez</u>, WFB's "argument is unpersuasive

4  [because] <u>Schmidt</u> and other cases have made clear that Congress intended to maintain parity

5  between national banks and non-banking corporations, a result entirely consistent with <u>American</u>

6  <u>Surety</u>."  <u>Martinez</u>, 2013 WL 2237879, at *7.  "<u>Schmidt</u> and <u>American Surety</u> are not inconsistent;

7  <u>Schmidt</u> acknowledged case law interpreting § 1348 as setting the principal place of business as

8  a national bank's citizenship . . . and left that question open."  <u>Id.</u> (citing <u>Schmidt</u>, 546 U.S. 317 n.

9  9).  The <u>Martinez</u> court goes on to recognize that the <u>American Surety</u> court's conclusion that a

10  corporation's citizenship is fixed by its principal place of business "appears to have been a

11  misstatement of the law at the time."  <u>Id.</u>  "However, regardless of whether <u>American Surety</u>

12  correctly identified the test for determining corporate citizenship as of 1943, the thrust of its

13  analysis was predicated on jurisdictional parity between national banks and corporations; that

14  rational was correct and consistent with <u>Schmidt</u>."  <u>Id.</u>

15       In short, WFB has not convinced the court that it should reject the holding of <u>American</u>

16  <u>Surety</u>.  Thus, in assessing diversity jurisdiction, WFB is a citizen of both California and South

17  Dakota.  Plaintiffs are citizens of California.  (<u>See</u> NR at 2-3; <u>see</u> <u>also</u> Complaint at ¶ 2).

18  Accordingly, diversity jurisdiction does not now exist and did not exist at the time of removal.

19       **This Order is not intended for publication.  Nor is it intended to be included in or**

20  **submitted to any online service such as Westlaw or Lexis.**

21                                        **<u>CONCLUSION</u>**

22       Based on the foregoing, IT IS ORDERED THAT:

23       1.  The above-captioned action shall be **remanded** to the Superior Court of the State of

24  California for the County of Los Angeles, 111 North Hill Street, Los Angeles, California 90012, for

25  lack of subject matter jurisdiction pursuant to 28 U.S.C. § 1447(c).

26  _____

27  such that "a corporation closely identified with State A could proceed in a federal court located in
   that State as long as the corporation had filed its incorporation papers in State B, perhaps a State
28  where the corporation did no business at all."  559 U.S. at 85, 130 S.Ct. at 1188.

2.  All pending motions **(Document Nos. 4 & 6)** are **denied** as moot.

3.  The Clerk shall send a certified copy of this Order to the state court.

Dated this 3rd day of January, 2014.

/s/
Fernando M. Olguin
United States District Judge